MOH/crr
97-28

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN AND MARY ROE, ET AL.  :  CASE NO:  C-1-83-1704

            **Plaintiffs,**  :  **JUDGE SPIEGEL**

vs.  :

MICHAEL COLBERT , DIRECTOR
OF ODJFS,  ET AL.  :

            **Defendants.**  :

---

### PLAINTIFFS' MOTION TO HAVE DEFENDANT SHOW
### CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT

---

COME the Plaintiffs, by Counsel, and hereby move the Court to enter an Order requiring Defendant to show cause why he should not be held in Contempt for violation of this Court's Consent Judgment (Doc. 45), the Agreed Order Modifying Consent Judgment of June 30, 1992 (Doc. 94), and the Agreed Order of July 27, 2006 (Doc. 125).  As grounds, Plaintiff states that Defendant has failed to comply with the requirements to implement and appropriate monitoring system and conduct a valid needs assessment.  For these reasons and for reasons more fully stated below, Plaintiffs request the Court to issue an Order requiring Defendant to show cause why he should not be held in contempt, to impose appropriate sanctions, and to award reasonable attorneys' fees and costs.

## MEMORANDUM IN SUPPORT

I.      INTRODUCTION

This class action challenged failure of Defendants to provide appropriate pre-removal and reunification services to families of dependant and neglected children.  Specifically, Plaintiff's brought their claims pursuant to 42 U.S.C. Section 1983, which alleged, among other things, that the predecessor to Defendant Michael Colbert (current director of Ohio Department of Job and Family Services) (ODJFS) failed to meet their obligations under Federal law to monitor the county agency's compliance with Public Law 96-272, 42 U.S.C. §627, *et seq*.,   A consent judgment was originally entered on October 9, 1986 (Doc. 45).

The Consent Judgment required Defendants to engage in specified monitoring activities regarding the county agency's provision of services to families with dependant and neglected children who are in danger of, or have been removed from their homes by the county children services agency.  It further obligated Defendants to conduct a periodic needs assessment regarding services to be provided to such families, including services designed to prevent removal of a child where appropriate, as well as services designed to promptly reunite children with their families where removal cannot be avoided and reunification is deemed feasible.  (Doc.  45).

On June 30, 1992, the Court entered an Agreed Order Modifying Consent Judgment.  (Doc. 94). That order, *inter alia,* required the Defendants to promptly proceed with implementation of a needs assessment plan.  On July 27, 2006 the Court entered an Agreed Order requiring Defendants to do the following:

(a)      "provide on-site monitoring of the county agency under Section Il(A) of the Consent Decree no less frequently than one time every twenty-four months"; and

2

(b)     to "comply with the provisions of the Child Protection Oversight and Evaluation (CPOE) System as described in Section 5101 :2-33-02 of the Ohio Administrative Code and that such compliance shall constitute compliance with the monitoring obligations as set forth in Section I(C) through Section I(I) of the Consent Decree and those portions of the Agreed Order entered August 3,1992 (Doc. 95) that relate to monitoring."

(Doc. 125, pp. 1-2, Agreed Order, July 27, 2006).

The Court also determined that,

compliance with the needs assessments requirements set forth in 45 C.F.R. 1357.15 (d)(3), through the completion of implementation of the Statewide Automated Child W c1fare Information System (SACWIS) in all 88 counties and actual completion of a needs assessment from the SACWIS data in a statistically valid sample of the counties shall constitute compliance with Section II of the Consent Decree and with those portions of the Agreed Order entered August 3, 1992 (Doc. 95) that relate to provision of needs assessments.

(*Id.*, p. 2). It was the intent of the Court and parties at the time of this last Order to bring the Defendants in full compliance with the terms of the original Consent Decree, as it related to monitoring and conducting needs assessments, so that Court oversight could finally be terminated. (*Id.* pp. 2-3).

Despite Plaintiffs' efforts over the years to accommodate state funding issues and issues related to changes in federal law, and despite the ongoing efforts of the Court appointed Expert, Etta Lappen Davis, the Defendants have never complied with the requirement of implementing a needs assessment for services to children who have been, or are in danger of being removed from their homes. In addition, the Defendants remain out of compliance with the monitoring requirements of the Consent Decree, as amended. For these reasons, Plaintiffs move the Court to require Defendants to show cause why they should not be held in contempt. Ultimately, Plaintiffs ask the Court to impose appropriate sanctions and to require Defendants to take such remedial action as necessary

3

to come into compliance with the Consent Judgment.

## II.    FACTS RELEVANT TO CONTEMPT

Since the entry of the July 27, 2006 Order, the Court approved expert, Etta Lappen Davis, has consistently communicated with Defendants and periodically met with them as part of her responsibilities to monitor Defendants' compliance with the Class Consent Decree.  As is apparent from her reports,[1] Defendants remain out of compliance with the requirements that they properly monitor county children services agencies and that they conduct an appropriate needs assessment.

## 1.    Developments Regarding Monitoring

In her June 13, 2008 Interim Report (Plaintiff's Exhibit A, hereto), while crediting the improvement in the monitoring compliance under the terms of the Consent Decree, Ms. Lappen-Davis raised the following concerns.

> The CPOE process, however, is threatened by budget cuts announced last month that would place the current process in jeopardy. ODJFS has slated for elimination the positions of key staff responsible for conducting CPOE site visits and providing technical assistance to the PCSAs. Substantial reduction of staff raises concern about the continued effectiveness of the CPOE system, and Ohio's ability to comply with the requirements of the Roe v. Staples Consent Decree, as modified.

(*Id.* p.  3). The Expert raised similar concerns in her May 22, 2009 Report (Plaintiffs' Exhibit B):

> The threats to the integrity of the CPOE process, however, are significant given reduction of staff resulting from budget cuts in FY'08. Mandated furlough days for each employee result in additional reduction of CPOE staff time. The substantial reduction of CPOE staff, since Consultant's initial recommendation that CPOE be considered adequate monitoring as required by Roe v Staples, raises concern about Ohio's ability to comply with the requirements of the Roe v. Staples Consent Decree, as modified.

---

[1] See Plaintiff's Exhibits A through E, Interim Reports for 2008 through 2012, attached hereto.

(*Id.* p. 3).

In her 2010 Interim Report, the Expert again reiterates her concerns regarding the Department's inability to comply with *Roe v. Staples* monitoring requirements.

> The substantial reduction of CPOE staff since Consultant's initial recommendation that CPOE be considered adequate monitoring as required by Roe v Staples raises concern about Ohio's ability to comply with the requirements of the Roe v. Staples Consent Decree, as modified.
>
> In addition, the convergence of CPOE Stage 8 and CFSR monitoring tools may reduce Ohio's capacity to identify and monitor performance issues relevant to Roe v. Staples that are not associated with CFSR compliance.

(Plaintiff's Exhibit C, p. 3).

Since that Report, there has been no substantive improvement in ODJFS' compliance with the monitoring requirements of the Consent Decree. The Expert's June 2012 Interim Report repeats concerns about staff reductions adversely affecting compliance with Consent Decree monitoring mandates. (Plaintiffs' Exhibit E, p. 3). In addition, the scope of the CPOE 8 process, which is now used as the monitoring tool for compliance with the Consent decree, has surfaced as a concern in itself. As Ms. Lappen Davis explains in her 2012 Report,

> Of greater concern, it's the scope and breadth of the CPOE 8 process itself. The Butler County CPOE 8 Final Report evidences that few of the CPOE 8 indicators are directly relevant to the issues of concern of Roe v. Staples.
>
> • The sample cases were reviewed only for the compliance during the six-month [*sic* 12-month] period under review (September 1, 2010 through August 31, 2011). Issues relevant to Roe v. Stapes that occurred before or after that time period were not considered or included in the report.
>
> • Seven in-home and three substitute care cases were reviewed in Butler County. Consideration of Roe v. Staples issues is not a factor in selection of cases for review.
>
> • Areas in which Ohio achieved an overall rating of strength in the most recent

5

CFSR review were not rated during CPOE Stage 8. Therefore, there are not ratings for some indicators, even if they might be relevant to Roe v. Staples monitoring.

• The CPOE 8 tool and process appear to place substantial emphasis on documentation and data entry, but little emphasis on quality of family support, content of contacts with children and families, or quality of case practice overall, issues that are critical to Roe v. Staples.

The convergence of CPOE Stage 8 and CFSR monitoring tools may have reduced Ohio's capacity to identify and monitor performance issues relevant to Roe v. Staples that are not associated with CFSR compliance.

These shortcomings demonstrate Defendant's failure to meet the monitoring obligations set out in OAC 5101:2-33-02 and, consequently breach Defendants' obligations under the Agreed Order of July 27, 2006. (Doc. 125, pp. 1-2).

## 2.      Developments Regarding Needs Assessment

In an effort to address concerns relating to costs, and consistent with the recommendation of the Court approved Expert, the parties entered into to an agreement that the required ODJFS to conduct a valid needs assessment through implementation of its Statewide Automated Child Welfare Information System (SACWIS). (Agreed Order, July 27, 2006, Doc. 125, pp. 1-2). The Order provides that "actual completion of a needs assessment from the SACWIS data in a statistically valid sample of the counties shall constitute compliance with Section II of the Consent Decree and with those portions of the Agreed Order entered August 3, 1992 (Doc. 95)." (*Id.*)

The Order permitting ODJFS to comply with the needs assessment requirement of the Consent Decree by incorporating that component into the state-wide roll out of SACWIS, would necessarily require the collection of valid and usable data. (See Consent Judgment, Doc. 45, Section II., pp. 5-6, as modified by Agreed Order, Doc. 125, p.2) . Ultimately, SACWIS would provide

6

the data necessary to complete the statewide needs assessment consistent with the mandate of the original consent decree.  As confirmed by Ms. Lappen Davis, ODJFS remains in breach of the needs assessment obligations both in its shortcoming with data validation and its utter failure to conduct the needs assessment itself. Indeed, no valid needs assessment has ever been completed by Defendant.

ODJFS' failure is summed up in the Expert's June 2012 Interim Report:

**2) Data Validation**

Ohio reports progress on SACWIS implementation, however, SACWIS financial rollout has not been completed.

Since statewide rollout of SACWIS is a pre-requisite for data validation. Data validation is dependent upon rollout and implementation statewide.

Ohio had anticipated a SACWIS site visit in July 2012; however, a visit has not been scheduled.

SACWIS certification is required for compliance with Roe v. Staples data validation expectations.

**3) Needs Assessment**

In previous reports, Consultant recommended that Plaintiffs and ODJFS agree that SACWIS data could be used as the basis for needs assessment.

ODJFS had provided SACWIS design documents, including screen specifications, case plan specifications, services and definitions that appeared to indicate SACWIS data could provide the foundation for valid needs assessment. Consultant reviewed the concern categories, services and definitions, and barriers lists in detail and found the lists to be comprehensive. Consultant determined that using the proposed SACWIS pull down screens and the accompanying narrative fields, staff should be able to accurately identify concerns and needed services for each child and member of the family. SACWIS fields have been updated, and revised fields have been provided to Consultant.

Although SACWIS provides a theoretical foundation for completion of needs assessment, *plans for using SACWIS data for needs assessment have not been*

*completed.*

(Plaintiff's Exhibit E, 2012 Interim Report, pp. 4-5) (Emphasis added).

When the Agreed Order of 2006 was entered, the parties hoped that ODJFS would be in full compliance within two years so that Court oversight of the Decree could be finally be terminated. (Agreed Order, Doc. 125, pp. 2-3.) Sadly, that has not come to fruition, thus necessitating the instant motion.

## III. ARGUMENT

### A. THIS COURT HAS JURISDICTION TO ENFORCE THE TERMS OF THE CONSENT DECREE AND THE SUBSEQUENT ORDERS ENTERED WITH RESPECT TO THAT DECREE

"'[The Sixth Circuit] has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it....'" *Therma-Scan, Incorporated v. ThermoScan, Incorporated,* 217 F.3d 414, 419 (6th Cir. 2000), quoting *Bostick Foundry Co. v. Lindberg,* 797 F.2d 280, 282-83 (6th Cir.1986). In this case, the original agreement and subsequent revisions have all been incorporated into Orders entered by this Court. "Therefore, the Agreement and well-established precedent provide[s] the district court with jurisdiction to enforce the settlement agreement/consent decree through the use of an equitable remedy . . . *Shy v. Navistar Int'l Corp.,* 701 F.3d 523, 533 (6th Cir. 2012).

### B. DEFENDANTS ARE IN CONTEMPT FOR THEIR FAILURE TO COMPLY WITH CONSENT JUDGEMENT AND SUBSEQUENT ORDERS.

"In a civil contempt proceeding, the petitioner must prove by clear and convincing evidence that the respondent violated the court's prior order." *Glover v. Johnson,* 934 F.2d 703, 707 (6th Cir.1991), citing *N.L.R.B. v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 590 (6th Cir.1987); *and see,*

8

*Maynard v. Nygren,* 332 F.3d 462, 469 (7th Cir.2003).[2]  The order must provide unambiguous guidance to the party against whom a contempt finding is sought.  *Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir.1991).  As shown below, for purposes of this motion Plaintiff need only make a preliminary showing that a hearing requiring the Defendant to show cause is appropriate.

### 1.  Violation of Orders Requiring Completion of a Needs Assessment

The Consent Decree and the subsequent Order of this Court, in clear terms, required Defendants to conduct and valid state-wide needs assessment regarding the availability of pre-removal and reunification services that should be available to dependent and neglected children and their families.  By the terms of the original Consent Judgment the Defendants were required to:

> develop and implement a method or system for completing a statewide needs assessment including use of a stratified sampling technique which is designed to take into account diversity within the state based on demographic variables and other relevant factors as determined by [ODJFS]. The needs assessment shall be conducted by appropriately qualified personnel one time every three years. . . .

(*See* Doc. 45, Consent Judgment, Section II (A), p. 5).  As confirmed by Ms. Lappen Davis' Interim Reports reviewed above, to date no valid needs assessment has been completed.

In an effort to accommodate the difficulty the Defendants were having in developing a valid needs assessment, the parties entered into a an agreement, incorporated into the 2006 Agreed Order, that would permit Defendants to comply with the needs assessment mandate by using the SACWIS data collection system developed by Defendants. (Doc. 125,  Agreed Order,, p.2).  Subsequent to the

---

[2] The Sixth Circuit has recently reiterated this burden. *Williamson v. Recovery Ltd. P'ship,* 467 F. App'x 382, 388 (6th Cir. 2012) *cert. denied,* 133 S. Ct. 478, 184 L. Ed. 2d 298 (U.S. 2012).  However, there appears to be some question as to whether this heavier burden is appropriate.   In *Wade v. Soo Line R.R. Corp.,* 500 F.3d 559, 564 (7th Cir.2007), however, expressed "doubt" that "clear and convincing" evidence is required, noting that the Supreme Court held in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) that heightened burdens of proof do not apply in civil cases unless a statute says so or the Constitution requires an elevated burden. See also *Ty Inc. v. Softbelly's, Inc.* 517 F.3d 494, 498 (7th Cir.2008)(same).

entry of the Order, the Court appointed Expert, consulted with the ODJFS in an effort to refine SACWIS so that it would indeed produce data that would meet requirements of the Original Consent Decree. While there have been some advances in the use of SACWIS (particularly related to payment of financial assistance) it has not yet been used to conduct a valid needs assessment (*See,* e.g., Plaintiff's Exhibit D, 2011 Interim Report, pp. 1-3, 5-6 ;Plaintiff's Exhibit E, 2012 Interim Report, pp. 1-3 and 4-5).

In her 2011 Report, the Expert set out the steps that were necessary in order Defendants to comply with the needs assessment provisions of the Consent Decree and subsequent orders. Her recommendations included: (1) improving service data entry in SACWIS; (2) improving data integrity; (3) ensuring retention of historical service data regarding services to children and families; (4) completing the financial roll-out of SACWIS; (5) improving SACWIS services functionality to more accurately report services information; (6) improving the data integrity of outcome and system reports. (Plaintiff's Exhibit D, 2011 Interim Report, pp. 6-8). Unfortunately, the 2012 Interim Report indicates that the SACWIS roll-out for all 88 counties, a necessary prerequisite for completing a statewide needs assessment, has not been completed. "Although SACWIS provides a theoretical foundation for completion of needs assessment, plans for using SACWIS data for needs assessment have not been completed." (Plaintiff's Exhibit E, 2012 Interim Report, p. 4). Obviously, the needs assessment is a critical component to the Consent Judgment as it provides accurate information regarding whether dependant and neglected children are receiving the services necessary to safely maintain children in their homes or, where removal is appropriate, provide prompt re-unification services.

After more than seven (7) years since entry of this Court's Order requiring completion of a

valid state-wide needs assessment through use of SACWIS, no such assessment has been done. Defendants are therefore in contempt of both the Consent Judgment and the Agreed Order of 2012.

## 2.    Violation of Orders Requiring Monitoring

Consent Judgment directed Defendants to conduct on-site monitoring of the county agency every 18 months.  That requirement was modified by the 2006 Agreed Order by permitting the on-site review to occur one time every Twenty-Four months. (Doc. 125, p. 1).  In addition the 2006 Order mandated that

> Defendants shall comply with the provisions of the Child Protection Oversight and Evaluation (CPOE) System as described in Section 5101:2-33-02 of the Ohio Administrative Code and that such compliance shall constitute compliance with the monitoring obligations as set forth in Section I(C) through Section 1(I) of the Consent Decree and those portions of the Agreed Order entered August 3,1992 (Doc. 95) that relate to monitoring.

(Doc. 125, pp. 1-2).  Despite the efforts of the Court appointed Expert and, as evidenced by the Interim Reports attached hereto, Defendants have never fully met their monitoring obligations under the Consent Decree.  Following entry the 2006 Agreed Order, each of Ms. Lappen Davis' Interim Reports has noted that staffing cut backs implemented by Defendants were having an adverse effect on Defendants' compliance with the monitoring provisions of the Consent Decree as revised by the Agreed Order.  For example, in her 2008 Report, the Expert notes that,

> Substantial reduction of staff raises concern about the continued effectiveness of the CPOE system, and Ohio's ability to comply with the requirements of the Roe v. Staples Consent Decree, as modified.

(Plaintiff's Exhibit A., p. 3).  In her 2012 Report, Ms. Lappen Davis confirms that

> •    The CPOE 8 [monitoring] tool and process appear to place substantial emphasis on documentation and data entry,  *but little emphasis on quality of family support, content of contacts with children and families, or quality of case practice overall,* issues that are critical to Roe v. Staples.

11

(Plaintiff's Exhibit E, p. 4). (Emphasis added).

The Agreed Order entered in 2006 was an effort by Plaintiffs and the Court Approved Expert to cooperate with Defendants to incorporate the CPOE process into the monitoring requirements of the Consent Judgment, and make CPOE an effective tool to achieve compliance with the monitoring mandates of the Consent Decree.  Failing to properly monitor the county agency regarding the "quality of family support,  content of contacts with children and families, or quality of case practice overall" unquestionably violates the letter and spirit of the original consent decree and the 2006 Agreed Order.

### 3. The Plaintiffs Are Entitled to an Order Requiring Defendants to Show Cause Why They Should Not be Held in Contempt.

It appears that the Defendants compliance deficiencies, as demonstrated in the attached Interim Reports,  are due, at least in part, to staffing cuts.  Whatever the justification, the Interim Reports of the Expert confirm that Defendants remain out of compliance with both the Monitoring and Needs Assessment provisions contained in the Consent Decree and this Court's subsequent Orders.

With the filing of this motion, the Plaintiffs are merely seeking to have this Court compel Defendants to show cause why they should not be held in contempt.  "The moving party is asking only for a preliminary order directing the alleged contemnor to show cause why the court should not find him in contempt." *U.S. S.E.C. v. Hyatt,* 621 F.3d 687, 696 (7th Cir.2010). "The purpose of a [show-cause] motion is to persuade the court that there should be a hearing at which the factfinder will ultimately evaluate whether a finding of contempt is appropriate on the evidence presented." *Sommerfield v. City of Chicago,* 252 F.R.D. 407, 413 (N.D.Ill.2008).  "The burden of establishing

the appropriateness of a hearing is less demanding than that for establishing contempt, requiring only 'a preliminary assessment that the facts presented implicate' that the alleged contemnors are in violation of court orders." *United States v. Capital Tax Corp.,* 2012 WL 1965982, *3 (N.D. Ill. May 31, 2012), *quoting, Sommerfield v. City of Chicago,* 252 F.R.D. at 413–14.

Plaintiffs have submitted sufficient evidence to support a finding of contempt with the appropriate entry of sanctions and award of attorney fees. Nevertheless, at this point the Court need only set the matter for a show cause hearing at which all parties may present evidence.

## CONCLUSION

As Plaintiffs have met their burden of demonstrating that there is substantial cause to believe Defendant Colbert is in violation of the Consent Decree and subsequent Orders requiring appropriate monitoring and a needs assessment, this Court should enter an Order requiring Defendant to show cause why he should not be held in contempt of Court.

Respectfully submitted,

/s/ Michael J. O'Hara
MICHAEL O'HARA (KY 52530) (OH 0014966)
O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
25 Town Center Boulevard, Suite 201
Covington, KY 41017
Tel: (859) 331-2000
Fax: (859) 578-3365
Email: mohara@ortlaw.com
ATTORNEYS FOR PLAINTIFFS

13

## __CERTIFICATION__

I hereby certify that I have, this 10th Day of April, 2013, served a copy of the foregoing on the Counsel of record, pursuant to the Court's ECF process:


David J. Espinoza, Esq.
Senior Assistant Attorney General
Health and Human Services Section
30 East Broad Street, 26th Floor
Columbus, OH 43215-3428

/s/ Michael J. O'Hara
MICHAEL O'HARA
O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT


E:\Docs\ROE.CIV\Pleadings\Motion for Contempt.wpd